```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF VIRGINIA

                             Alexandria Division

UNITED STATES OF AMERICA       )
                               )
       v.                      )   1:10cr304 (JCC)
                               )
AFSAR MIAH,                    )
                               )
    Defendant.                 )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on the sentencing of Defendant Afsar Miah.  On August 8, 2012, Defendant pled guilty to three counts of Importation of Pseudoephedrine, in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(d)(6).

### I. Background

A. Factual Background

On August 8, 2012, Mr. Miah pleaded guilty to Counts Five, Six, and Seven of the indictment in this case charging that Mr. Miah unlawfully imported pseudoephedrine.  Each count alleges that on the respective dates of August 25, 2009, September 15, 2009, and March 9, 2010, Mr. Miah, using FedEx, "did unlawfully, knowingly, and intentionally import into the United States . . . a quantity of a mixture and substance containing a detectable amount of pseudoephedrine, a list I chemical, in violation of Title 21, United States Code, Section 952(a)" in the form of a cumulative total of

1

74,534 pseudoephedrine tablets, which ultimately represented the importation of three or more kilograms of pseudoephedrine. [Dkt. 23.] The relevant penalty statute for the instant violations of 21 U.S.C. § 952(a) is 21 U.S.C. § 960(d)(6).

    B. Procedural Background

On September 28, 2012, pursuant to the United States Sentencing Guidelines, U.S.S.G. § 1A1.1, *et seq.* (the "Sentencing Guidelines" or "Guidelines"), the United States Probation Office (the "Probation Office") issued a pre-sentence report ("PSR"), initially calculating Defendant as falling into criminal history category I with a guideline range of 168 to 210 months as calculated from the sentencing table, a restricted guideline range of 120 months on Count 5, and a restricted guideline range of 48 to 90 months on Count 6 and Count 7, respectively. [Dkt. 26.] On October 24, 2012, the Probation Office issued a second PSR that recalculated Defendant's Guideline range as being zero to six months from the sentencing table, with the restricted guideline range no longer being applicable. [Dkt. 27.] Defendant's criminal history category remained the same. The Probation Office also issued an accompanying Addendum to the PSR (the "Addendum"). [Dkt. 27, ex. 1.]

On October 25, 2012, Defendant submitted their Position on Sentencing ("Defendant's Position"), and therein argues that the application of U.S.S.G. § 2D3.1 is appropriate in this case. As the relevant guideline range for Defendant's offenses under that section would be zero to six months, and because Mr. Miah has been in custody since October 1, 2011, Defendant's Position is that Mr. Miah should

receive a sentence of time served.  [Dkt. 29.]  On October 31, 2012, the United States ("the Government" or "the United States") submitted its Position on Sentencing, and therein argues that application of U.S.S.G. § 2D1.1 is appropriate in Defendant's case.  Under that sentencing scheme, the applicable guideline range would be 168 to 210 months.  The Government argues that Mr. Miah should receive a term of imprisonment of approximately 120 months.

## II. Standard of Review

Sentences are imposed in accordance with 18 U.S.C. § 3553(a).  The Guidelines calculations are just one factor the Court takes into consideration when sentencing.  *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007).  I understand that I am free to depart upwards or downwards from the guidelines range and to grant variances as *Gall* permits district courts to impose sentences both above and below the guideline recommendations.  *See Gall*, 552 U.S. at 45.  I also understand that, under *United States v. Nelson*, 129 S. Ct. 890, 892 (2009), a sentencing court may not presume that a sentence within the applicable Sentencing Guidelines range is presumptively reasonable.

Section 3553(a) of Title 18 lists several factors for the Court to consider in imposing a sentence.  Relevant here, 18 U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant."  Section 3553(a) also provides that the court shall

consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, provide restitution to the victim, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### III. Analysis

There is considerable disagreement between the parties as to the precise guideline applicable in this case. It bears repeating that the relevant penalty statute for the instant violations of 21 U.S.C. § 952(a) is 21 U.S.C. § 960(d)(6), the language of which has been adopted by the Government in charging the Defendant, and which also describes the elements of the offenses charged and the statutory maximum penalty. [Dkt. 1.] However, there is a divergence between the referenced guideline sections applicable to the charge and penalty provisions of the instant offenses for which Mr. Miah has been charged and convicted. The Statutory Index of the Guidelines Manual, as it is currently written, cites different guideline sections as being applicable to 21 U.S.C. § 952(a) and 21 U.S.C. § 960(d)(6) respectively, and those referenced guideline sections further cite different sentencing ranges as being applicable. Specifically, the Statutory Index states that applicable guideline section for violations of 21 U.S.C. § 952 is USSG §2D1.1, and also specifies that

4

the applicable guideline section for statutory violations of 21 U.S.C. § 960(d)(6) is USSG §2D3.1.

In its Addendum, the Probation Office states that it contacted the United States Sentencing Commission for guidance in resolving this issue. (Add. A-1.) Specifically, the Addendum states that the primary purpose of contacting the Sentencing Commission was to inquire as to "whether USSG §2D1.1 (a "controlled substance" guideline) could be applied to the instant offense (a "listed chemicals" offense) even if the offense of conviction did not include elements that the listed chemical was being used in the manufacture of a controlled substance." (*Id.*) According to the Addendum, the Sentencing Commission advised the Probation Office that USSG §2D1.1 could be used because pseudoephedrine was listed in the Drug Equivalency Table (USSG §2D1.1, comment. (n.10(D)) and, consequently, that there was no requirement that the listed chemical was used to manufacture a controlled substance. This advice is apparently reflected in the first PSR that initially disclosed on September 27, 2012. In the first PSR, the Probation Office applied USSG §2D1.1 to Defendant's offenses, which yielded in an Offense Level of 38, which was reduced to a Level 35 after the application of credit for Acceptance of Responsibility, and thereby resulted in a total advisory guideline range of 168 to 210 months imprisonment. (*Id.*)

However, as the Probation Office states in the Addendum, subsequent to the disclosure of the first PSR, contact with the Sentencing Commission revealed that the original interpretation by the Sentencing Commission in applying USSG §2D1.1 for a listed chemical

offense that did not involve the manufacture of a controlled substance was not correct.  (*Id* at A-2.)  The Probation Office states that it was further informed by the Sentencing Commission that it appears that the Sentencing Commission did not update the Statutory Index as it relates to 21 U.S.C. § 952 subsequent to including the List I chemicals ephedrine, pseudoephedrine, and phenylpropanolamine in 21 U.S.C. § 952 in accordance with the USA PATRIOT Improvement and Reauthorization Act of 2005, which also amended 21 U.S.C. § 960(d)(6) to include reference to violations of 21 U.S.C. § 952 with regard to the importation of listed chemicals.  (*Id*.)  The Probation Office further states that, according to the Sentencing Commission, it is evident that the Statutory Index was not updated because, if it had been updated, the guideline reference to 21 U.S.C. § 952 in the Statutory Index would include references not only to a controlled substances guideline, but also reference to at least one listed chemical guidelines.  (*Id*.)  The Addendum states that because the Sentencing Commission failed to update the Statutory Index regarding 21 U.S.C. § 952, it may be assumed that it failed to consider possible updates to the Statutory Index regarding 21 U.S.C. § 960(d)(6).[1]  (*Id*.)

The Addendum further states that the Sentencing Commission then informed the Probation Office that due to the failure to update the Statutory Index, it could be said that the appropriate guideline is not currently referenced in the Statutory Index and that, pursuant

---

[1] It is not clear from the Addendum whether this representation may be attributed to the Sentencing Commission instead of the Probation Office itself.  However, a footnote that accompanies the aforementioned statement states that the Sentencing Commission has indicated that it will most likely undertake review at this matter during their next amendment cycle, and that it is expected that the Statutory Index of the Guidelines Manual will be revised.  (Add. at A-2, fn. 3.)

6

to USSG §1B1.2(a) and USSG §2X5.1, the most analogous guideline for the offenses of conviction should be applied. (*Id.*)

At that time, the Probation Office thought the most analogous guideline was USSG §2D1.11. (*Id.*) However, after further review of 21 U.S.C. § 960(d)(6), as well as further consultation with the Sentencing Commission, the Probation Office states that it is apparent that 21 U.S.C. § 960(d)(6) already referenced listed chemical importation violation prior to the enactment of the USA PATRIOT Improvement and Reauthorization Act of 2005.[2] (*Id* at A-2, A-3.) In the estimation of the Probation Office, it appears that the Sentencing Commission had considered the appropriate guideline reference for a listed chemical importation offense with a penalty to be determined by 21 U.S.C. § 960(d)(6). (*Id* at A-3.) Consequently, the Probation Offices believes that it cannot be determined that the Sentencing Commission would make changes to the guideline references to 21 U.S.C. § 960(d)(6) and, if they do choose to make changes, what those precise changes would be. (*Id.*) Therefore, the Probation Office states that it must apply the guideline calculations in effect at the time of sentencing, which would be §2D3.1 in this case. (*Id.*)

This Court believes that it bears reiteration that the chemical pseudoephedrine, despite falling within the purview of 21 U.S.C. § 952, is not in itself a controlled substance.[3] Rather,

---

[2] *See* 21 U.S.C. §§ 957 and 971. The Probation Office further states that neither are referenced in the Statutory Index and that only apparent means to locate the applicable Guideline is by consulting the applicable penalty provision, *i.e.*, 21 U.S.C. § 960(d)(6).
[3] Entitled "Importation of Controlled Substances," 21 U.S.C. § 952(a) states that, with exceptions, "[i]t shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance

7

pseudoephedrine is a List I chemical, *i.e.*, a "listed chemical," that is typically subject to different treatment under federal law.[4]  The inclusion of pseudoephedrine in 21 U.S.C. § 952, a section that is primarily focused on controlled substances and the manufacture and distribution thereof, imbues Defendant's case with some complication.  Although the importance of the chemical to the manufacture of methamphetamine is undeniable, this does not represent the sole purpose for which pseudoephedrine may be used.  Though the Government argues at length regarding the importance of restricting pseudoephedrine's importation in curtailing the domestic market for methamphetamine, a position that is undoubtedly meritorious from a policy standpoint, the Government also concedes that pseudoephedrine in fact has a legitimate use as an "ingredient in some cold medicine that is used to treat respiratory symptoms."  (U.S. Pos. 3.)  Indeed, the Government states that the pseudoephedrine market "is covered both by the statutory provisions governing drug trafficking as well as by lesser provisions governing regulatory offenses by legitimate pharmaceutical dealers."  (U.S. Pos. 3.)  Consequently, it does not follow that the improper importation of pseudoephedrine automatically places a given defendant within the purview of the statutory regime that relates to the production and sale of methamphetamine, a point that is particularly true when, but for a regulatory violation, the

---

in schedule I or II of subchapter I of this chapter, or ephedrine, pseudoephedrine, or phenylpropanolamine, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter...."  21 U.S.C. § 952(a).
[4] *See* 21 C.F.R. § 1310.02, *et seq.*

importation is otherwise appropriate under the law and there exists nothing to link a defendant to the controlled substance.

§1B1.2 instructs a sentencing court to "determine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction." Notwithstanding the findings of the Probation Office, the Government submits that the appropriate sentence in this case, based on a consideration of all of the factors of 18 U.S.C. § 3553(a), is a sentence of 120 months of imprisonment. (U.S. Pos. 2.) The Government argues that "there can be no legitimate dispute as to the purpose of the pseudoephedrine being trafficked by this defendant ...," the seeming implication being that Mr. Miah's purpose in shipping the pseudoephedrine was to facilitate the manufacture and/or sale of methamphetamine.

In the present case, this Court has not been apprised of the existence of any evidence linking Mr. Miah to methamphetamine itself. This dearth of evidence, combined with the biographical information contained in the second PSR, increases the likelihood that Mr. Miah properly falls under the regulatory provisions governing pharmaceutical and otherwise lawful merchants. Mr. Miah is a dual citizen of Bangladesh and Belize. The PSR specifies that, from 2007 to October 2011, Mr. Miah owned a pharmaceutical supply business in Belize. The PSR also states that Mr. Miah "advised he sold pharmaceuticals from Bangladesh, which he sold in wholesale quantities and prices to pharmacies in Belize." (Second PSR 14.) Furthermore, the Government concedes that "defendant was not involved in the actual manufacture, importation, or trafficking of methamphetamine before or

9

during this investigation." (U.S. Pos. 9.) The agreed-upon Statement of Facts in this case makes no mention of methamphetamine or any other statutorily-defined controlled substance. The same is true with regard to the Indictment in this case. There exists no evidence regarding Mr. Miah's knowledge of the purposes to which the imported pseudoephedrine was to be put, and he was not charged with an offense that required the Government to prove knowledge that the pseudoephedrine Mr. Miah imported would be used in relation to methamphetamine. It also bears mentioning that there is no evidence that Mr. Miah has admitted to any association with methamphetamine, either within his Acceptance of Responsibility otherwise. Simply put, there exists no substantive evidence linking Mr. Miah with methamphetamine itself. Consequently, the Government's argument that the application of a more punitive guideline is necessitated by Defendant's conduct as it relates to a controlled substance does not resonate with this Court. To be sure, the Government had its choice in the manner in which it wished to proceed in indicting and prosecuting Mr. Miah, and did not proffer any sort of evidence linking Mr. Miah to methamphetamine. This Court cannot and will not assume that such evidence exists. This Court therefore is unable justify the application of USSG §2D1.1 or USSG §2D1.11 simply based upon Mr. Miah's conduct.

This Court agrees with the Probation Office that it cannot be determined what the Sentencing Commission's precise course of action would be with regard to any changes to the respective statutory regimes and Sentencing Guidelines applicable to 21 U.S.C. § 952(a) and

21 U.S.C. § 960(d)(6).  This Court will not attempt to predict their course of action.  Further, the Supreme Court has stated that "[I]n interpreting a statute a court should always turn to one cardinal canon before all others. . . .[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat'l Bank v. Germain*, 112 S. Ct. 1146, 1149 (1992).  Consequently, the Court will not presume to read error into the regime in the manner requested by the Government, particularly under circumstances that suggest the that Congress intended to maintain a distinction between, on one hand, regulatory violations related to the importation of pseudoephedrine and, on the other hand, the trafficking of pseudoephedrine in relation to the production or distribution of methamphetamine.

Additionally, this Court believes that the principle of lenity has some relevance to this case.  The principle of lenity holds that in construing an ambiguous criminal statute, courts should resolve the ambiguity in favor of the defendant. *See McNally v. United States*, 483 U.S. 350 (1987).  Indeed, given the aforementioned ambiguity in the statutory regime, Court believes that the instant scenario presents a situation in which the application of lenity would be just.  The respective configurations of 21 U.S.C. § 952 and 21 U.S.C. § 960(d)(6), as well as the guideline references associated with these sections, have instilled the current drug sentencing regime with some uncertainty as to the proper treatment of a chemical like pseudoephedrine under circumstances such as those in the instant case. To be sure, it is not clear the extent to which the mentioned listed

chemicals should be treated similarly to the controlled substances. In addition, the Sentencing Commission concedes the current guideline configuration is not like to have been properly formulated, an opinion that this Court has taken into consideration. Having considered the foregoing, this Court believes that there is ample evidence of ambiguity sufficient to lend support to this Court's consideration of lenity in the instant matter.

As a consequence of the foregoing considerations, this Court will apply §2D3.1 in sentencing Mr. Miah. Despite having settled upon the application of §2D3.1 to sentencing in this case, however, the Court notes that there is an unmistakable possibility that Mr. Miah may have been linked to the sale of methamphetamine, and there this possibility has certainly not been foreclosed. Indeed, the circumstantial arguments proffered by the Government, coupled with the unforeseen lack of clarity of the relevant statutory scheme, as well as the further compounded by the lack of clarity to the associated guideline references, provides sufficient justification to convince this Court that it is appropriate to depart upwards under the circumstances pursuant to USSG §§5K2.0(a)(1)(A) and 5K2.21, as well as the factors promulgated under 18 U.S.C. § 3553(a).

### IV. Conclusion

The Court finds Mr. Miah's guideline range under §2D3.1 results in a range of zero to six months imprisonment. The Court finds that due to the seriousness of the offense, the need to promote respect for the law, provide just punishment, afford adequate

deterrence to criminal conduct, as well as the other 18 U.S.C. § 3553(a) factors, that an upward departure of twelve months is appropriate. The Defendant has served thirteen months already, and a sentence of time served is sufficient, but not greater than necessary.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| November 2, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |